1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RITA M. BREZINKSY,                    )   Case No. ED CV 06-83-OP
                                      )
                    Plaintiff,        )
                                      )
        v.                            )   MEMORANDUM OPINION; ORDER
                                      )
MICHAEL J. ASTRUE,[1]                 )
Commissioner of Social Security,      )
                                      )
                    Defendant.        )
                                      )

        The Court[2] now rules as follows with respect to the disputed

issues listed in the Joint Stipulation ("JS").[3]

**I.**

        [1] Michael J. Astrue, who was sworn in as the Commissioner of the Social
Security Administration on February 12, 2007, is substituted as Defendant
pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

        [2] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the
United States Magistrate Judge in the current action.  (See Dkt. Nos. 7, 9.)

        [3] As the Court advised the parties in its Case Management Order, the
decision in this case is being made on the basis of the pleadings, the Administrative
Record, and the Joint Stipulation filed by the parties.  In accordance with Rule
12(c) of the Federal Rules of Civil Procedure, the Court has determined which
party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1

1

## DISPUTED ISSUES

2    As reflected in the Joint Stipulation, the disputed issues which Plaintiff

3  raises as the grounds for reversal and/or remand are as follows:

4    1.    Whether the ALJ erred by failing to properly evaluate Plaintiff's

5          credibility;[4]

6    2.    Whether the ALJ properly considered the opinions of Plaintiff's

7          treating physicians; and

8    3.    Whether the ALJ posed a complete hypothetical to the vocational

9          expert ("VE").

10  (JS at 4.)

11

## II.

12

## STANDARD OF REVIEW

13    Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision

14  to determine whether the Commissioner's findings are supported by substantial

15  evidence and whether the proper legal standards were applied. DeLorme v.

16  Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more

17  than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402

18  U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of

19  Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial

20  evidence is "such relevant evidence as a reasonable mind might accept as adequate

21  to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The

22  Court must review the record as a whole and consider adverse as well as

23  supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986).

24  Where evidence is susceptible of more than one rational interpretation, the

25  Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452

26

27    [4] Plaintiff also contends that the ALJ erred by improperly applying the
    "excess pain and other symptoms" rule. (JS at 4.) The Court discusses this issue

28  in its analysis regarding the ALJ's evaluation of Plaintiff's credibility.

1    (9th Cir. 1984).

2                                    **III.**

3                               **DISCUSSION**

4    **A.    The ALJ Properly Evaluated Plaintiff's Credibility.**

5            Plaintiff contends the ALJ failed to provide clear and convincing reasons for

6    rejecting her subjective pain testimony.  (JS at 4.)  In particular, Plaintiff claims

7    that the ALJ improperly rejected Plaintiff's subjective symptoms of pain, fatigue,

8    and urinary incontinence.  (Id. at 4, 11-12.)  Defendant argues that the ALJ

9    provided specific, clear and convincing reasons, supported by substantial evidence,

10   to reject Plaintiff's subjective symptoms of pain, fatigue, and urinary incontinence.

11   (Id. at 7, 17.)

12           An ALJ's assessment of pain severity and claimant credibility is entitled to

13   "great weight."  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v.

14   Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  When, as here, an ALJ's disbelief of a

15   claimant's testimony is a critical factor in a decision to deny benefits, the ALJ must

16   make explicit credibility findings.  Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th

17   Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also

18   Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that

19   claimant was not credible is insufficient).

20           Under the "Cotton test," where the claimant has produced objective medical

21   evidence of an impairment which could reasonably be expected to produce some

22   degree of pain and/or other symptoms, and the record is devoid of any affirmative

23   evidence of malingering, the ALJ may reject the claimant's testimony regarding

24   the severity of the claimant's pain and/or other symptoms only if the ALJ makes

25   specific findings stating clear and convincing reasons for doing so.  See Cotton v.

26   Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d

27   1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993);

28   Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991).

1       To determine whether a claimant's testimony regarding the severity of his

2 symptoms is credible, the ALJ may consider, *inter alia*, the following evidence: (1)

3 ordinary techniques of credibility evaluation, such as the claimant's reputation for

4 lying, prior inconsistent statements concerning the symptoms, and other testimony

5 by the claimant that appears less than candid; (2) unexplained or inadequately

6 explained failure to seek treatment or to follow a prescribed course of treatment;

7 (3) the claimant's daily activities; and (4) testimony from physicians and third

8 parties concerning the nature, severity, and effect of the claimant's symptoms.

9 Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Smolen, 80

10 F.3d at 1284.

11       Social Security Ruling ("SSR") 96-7p further provides factors that may be

12 considered to determine a claimant's credibility such as:

13       1) the individual's daily activities;

14       2) the location, duration, frequency, and intensity of the individual's pain

15       and other symptoms;

16       3) factors that precipitate and aggravate the symptoms;

17       4) the type, dosage, effectiveness, and side effects of any medication the

18       individual takes or has taken to alleviate pain or other symptoms;

19       5) treatment, other than medication, the individual receives or has received

20       for relief of pain or other symptoms;

21       6) any measures other than treatment the individual uses or has used to

22       relieve pain or other symptoms (e.g., lying flat on his or her back, standing

23       for 15 to 20 minutes every hour, or sleeping on a board); and

24       7) any other factors concerning the individual's functional limitations and

25       restrictions due to pain or other symptoms.

26 SSR 96-7p.

27       Here, the ALJ expressly discredited Plaintiff's subjective complaints based

28 on her daily activities, which the ALJ found to be inconsistent with her allegations

4

1   of excess pain and fatigue.  (AR at 18.)  As the ALJ noted in the body of his

2   decision, Plaintiff described a "fairly wide range of daily activities" to the ALJ at

3   the May 20, 2003, hearing.  (Id. at 21, 703-16.)  She admitted that she leaves her

4   house "[a]pproximately seven times" a month for medical appointments, shops for

5   groceries "two times [a month]," and cooks dinner "[f]ive days out of seven day

6   [sic]."  (Id. at 711-12.)  Additionally, in a "Daily Activities Questionnaire,"

7   Plaintiff described that on an average day, she does the dinner dishes, gets into her

8   pool, washes one load of laundry, feeds the animals, watches televisions, gardens,

9   and begins cooking dinner.  (Id. at 98.)  In his decision, the ALJ stated, "despite

10  her statements of almost complete dependence on family and friends for daily

11  activities . . . the claimant has continually described a fairly wide range of routine

12  daily activities consisting of driving, shopping, normal housework, etc."  (Id. at

13  18.)  The Court finds that the ALJ could properly rely on Plaintiff's daily activities,

14  such as, *inter alia*, completing household chores, gardening, cooking, and

15  shopping, to support his adverse credibility determination.  See, e.g., Thomas, 278

16  F.3d at 958-59 (ALJ may properly consider inconsistencies between claimant's

17  testimony and claimant's daily activities); Morgan v. Apfel, 169 F.3d 595, 599-600

18  (9th Cir. 1999) (ALJ may properly rely on contradictions between claimant's

19  reported limitations and claimant's daily activities); Tidwell v. Apfel, 161 F.3d

20  599, 602 (9th Cir. 1998) (daily activities inconsistent with total disability

21  undermined subjective testimony of disabling pain); Orteza v. Shalala, 50 F.3d

22  748, 750 (9th Cir. 1995) (ALJ may properly rely on claimant's daily activities,

23  including ability to drive); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989)(ALJ

24  may properly rely on daily activities inconsistent with claim of disabling pain);

25  SSR 96-7p.

26      Further, at the hearing, Plaintiff indicated that her back, neck, and shoulders

27  hurt her and restricted her movement.  (Id. at 711-13.)  However, the ALJ observed

28

5

1    that "during the hearing, she was quite animated when distracted by the subject

2    matter of her testimony, and moved her head and neck easily and extensively as

3    she talked." (Id. at 18.)  While it is impermissible for the ALJ to rely solely on the

4    claimant's appearance at the hearing, the "inclusion of the ALJ's personal

5    observations does not render the decision improper." Verduzco v. Apfel, 188 F.3d

6    1087, 1090 (9th Cir. 1999) (citing Perminter v. Heckler, 765 F.2d 870, 872 (9th

7    Cir. 1985)).  As in Verduzco, Plaintiff exhibited symptoms, i.e., ability to move

8    easily and animatedly, that were inconsistent with Plaintiff's alleged pain and

9    fatigue symptoms. Id.  Thus, this also is a clear and convincing reason to reject

10   Plaintiff's testimony regarding the severity of her pain. See Cotton, 799 F.2d at

11   1407; see also Smolen, 80 F.3d at 1281; Dodrill, 12 F.3d at 918; Bunnell, 947 F.2d

12   at 343.

13        Next, the ALJ also based his adverse credibility determination on the

14   observations of the examining sources as to the lack of plausibility of Plaintiff's

15   subjective complaints.  (AR at 18.)  The ALJ indicated that, "[d]espite various

16   statements to depict the claimant as being disabled or otherwise markedly restricted

17   in her functional capabilities, the various medical reports continually refer to Grade

18   I spondylolisthesis, i.e., the lowest level of severity at which there would be no

19   significant limitations on an individual's functioning." Id.  To substantiate this

20   finding, the ALJ relied in part on an orthopedic evaluation performed by Dr. David

21   L. Drake on November 20, 2001.  The ALJ noted that during this orthopedic

22   evaluation, Plaintiff indicated that she could, "lift and carry sufficiently to grocery

23   shop and that she bicycles for exercise, can stand for 2 hours and sit for 1 hour and

24   performs light housework and self-care." (Id. at 16, 172-76.)  These admissions

25   further support the ALJ's adverse credibility determination. Additionally, the ALJ

26   points to other medical records indicating that Plaintiff has mild lumbar

27   spondylolisthesis. (Id. at 16, 126, 154.)  Accordingly, the ALJ properly discounted

28

1 Plaintiff's credibility based upon testimony from physicians concerning the nature,
2 severity and effect of the Plaintiff's symptoms.  <u>Thomas</u>, 278 F.3d at 958-59;
3 <u>Smolen</u>, 80 F.3d at 1284.

4      Finally, the ALJ relied upon several medical opinions and Plaintiff's own
5 testimony to discredit the alleged severity of her incontinence.  (<u>Id.</u> at 16-18.)  The
6 ALJ found that Plaintiff's complaints of severe incontinence were, among other
7 things, a result of "excess caffeine and cigarette consumption." (JS at 18.)  In fact,
8 urologist Dr. Barton H. Wachs evaluated Plaintiff on February 20, 2002, and noted
9 that Plaintiff "drinks an excessive amount of coffee and sodas" and "smokes a pack
10 of cigarettes a day." (AR at 416.)  Dr. Wachs also indicated that Plaintiff's eleven
11 pregnancies "surely could cause, and does in most cases, hypermobility of the
12 urethra manifested by urinary incontinence, especially when coughing, laughing,
13 and sneezing."  (<u>Id.</u> at 417.)  Dr. Wachs concluded that Plaintiff "can return [to
14 work] immediately without any restrictions.  However, I would state that she must
15 need to have bladder facilities since she has such frequency and urgency."  <u>Id.</u>  One
16 of Plaintiff's treating physicians, urologist Dr. Robert S. Sanford, recommended
17 that Plaintiff practice "time voiding in order to keep her bladder empty and she
18 should perform Kegel exercises."  (<u>Id.</u> at 439.)  Also, Dr. Sanford concluded that
19 Plaintiff's urological complaints were not disabling at that time.  (<u>Id.</u> at 439.)  On
20 March 22, 2002, another urologist, Dr. Kiarash Michel, concluded that Plaintiff
21 "has no significant stress or urge component to her incontinence unless her bladder
22 is filled to excess . . . . It therefore appears that [Plaintiff's] symptoms may be best
23 addressed with a timed voiding regiment."  (<u>Id.</u> at 422.)  Additionally, Plaintiff
24 testified at the hearing that she needs to urinate approximately every thirty to forty
25 minutes.  (<u>Id.</u> at 699.)  Taking Plaintiff's stated frequency into account, the ALJ
26 opined that, "[B]ecause of her incontinence she requires a brief restroom break
27 once per hour."  (<u>Id.</u> at 18.)  Therefore, the ALJ properly discounted Plaintiff's

28

1   credibility regarding the severity and effect of Plaintiff's incontinence based upon

2   testimony from physicians and Plaintiff's own testimony.  Thomas, 278 F.3d at

3   958-59; Smolen, 80 F.3d at 1284; SSR 96-7p.

4       Based on the foregoing, the Court finds that the ALJ provided clear and

5   convincing reasons, supported by substantial evidence, for rejecting Plaintiff's

6   credibility regarding her subjective contentions of excess pain, fatigue, and urinary

7   incontinence.

8   **B.    The ALJ Properly Considered the Opinions of Plaintiff's Treating**

9       **Physicians.**

10      Plaintiff makes a general contention that the ALJ improperly considered

11  and/or rejected the opinions of Plaintiff's treating physicians, Drs. Ralph Steiger,

12  Robert Sanford and David Wood, but does not set forth any specific reasons to

13  support her argument.  (JS at 22-25.)  The Court disagrees.

14      It is well-established in the Ninth Circuit that a treating physician's opinions

15  are entitled to special weight, because a treating physician is employed to cure and

16  has a greater opportunity to know and observe the patient as an individual.

17  McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).  "The treating

18  physician's opinion is not, however, necessarily conclusive as to either a physical

19  condition or the ultimate issue of disability."  Magallanes v. Bowen, 881 F.2d 747,

20  751 (9th Cir. 1989).  The weight given a treating physician's opinion depends on

21  whether it is supported by sufficient medical data and is consistent with other

22  evidence in the record.  See 20 C.F.R. § 404.1527(d)(2).  If the treating physician's

23  opinion is uncontroverted by another doctor, it may be rejected only for "clear and

24  convincing" reasons.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1996); Baxter v.

25  Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991).  If the treating

26  physician's opinion is controverted, it may be rejected only if the ALJ makes

27  findings setting forth specific and legitimate reasons that are based on the

28

8

1  substantial evidence of record.  Thomas, 278 F.3d 947, 957 (9th Cir.

2  2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir.

3  1987).

4       However, the Ninth Circuit also has held that "[t]he ALJ need not accept the

5  opinion of any physician, including a treating physician, if that opinion is brief,

6  conclusory, and inadequately supported by clinical findings."  Thomas, 278 F.3d at

7  957; see also Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).  A treating

8  or examining physician's opinion based on the plaintiff's own complaints may be

9  disregarded if the plaintiff's complaints have been properly discounted.  Morgan v.

10  Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999); see also

11  Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997); Andrews v. Shalala, 53

12  F.3d 1035, 1043 (9th Cir. 1995).  Additionally, "[w]here the opinion of the

13  claimant's treating physician is contradicted, and the opinion of a nontreating

14  source is based on independent clinical findings that differ from those of the

15  treating physician, the opinion of the nontreating source may itself be substantial

16  evidence; it is then solely the province of the ALJ to resolve the conflict."

17  Andrews, 53 F.3d at 1041; Magallanes, 881 F.2d at 751; Miller v. Heckler, 770

18  F.2d 845, 849 (9th Cir. 1985).

19       Here, the ALJ stated the following regarding Plaintiff's alleged impairments:

20       Despite various statements attempting to depict the claimant as

21  being disabled or otherwise markedly restricted in her functional

22  capabilities, the various medical reports continually refer to Grade I

23  spondylolisthesis, i.e., the lowest level of severity at which there

24  would be no significant limitations on an individual's functioning.

25  Her complaints of ongoing incontinence have been concluded to be

26  the probable result of her excess caffeine and cigarette consumption

27  rather than due to her orthopedic impairment.  I note too, that during

28

the hearing she was quite animated when dstracted [sic] by the subject matter of her testimony, and moved her head and neck easily and extensively as she talked.

In any event, the undersigned is unable to credit the statements by treating or examining sources to the effect that claimant is disabled or otherwise impaired to an extent beyond that found herein. Rather, the undersigned gives considerable weight to the State Agency's medical assessment, which was based on a thorough review of the medical records and which concluded that the claimant was capable of performing a full range of "medium" level work, i.e., jobs involving lifting and carrying from 25 pounds frequently to 50 pounds occasionally and mainly standing and/or walking. However, in view of her gastritis, she requires a relatively low stress job and because of her incontinence she requires a brief restroom break once per hour. Additionally, her impairment-related pain and discomfort requires an at [will] sit/stand option and the need to change positions about every 30 minutes. Those limitations provide a fair accommodation with regard to the severe impairments identified here and her impairment-related limitations that reasonably result therefrom.

(AR at 18 (citations omitted).)

The Court finds there to be specific and legitimate reasons for rejecting the opinions of the three treating physicians. Andrews, 53 F.3d at 1041; Magallanes; 881 F.2d 751; Miller, 770 F.2d at 849. First, Dr. Steiger concluded that Plaintiff was temporarily totally disabled based primarily on Plaintiff's subjective pain complaints, which were properly discredited by the ALJ. (AR at 18, 210, 226, 455, 488); Morgan, 169 F.3d at 602; Sandgathe, 108 F.3d at 980; Andrews, 53 F.3d at 1043; see also discussion infra Part IV. A. While Dr. Steiger diagnosed orthopedic

10

impairments, he failed to explain how these orthopedic impairments allegedly inhibited Plaintiff from performing her past or any other type of work.  (AR at 206-27, 441-91.)  The ALJ is not required to accept the unsupported and conclusory opinion of Dr. Steiger.  <u>Thomas</u>, 278 F.3d at 957; <u>Matney</u>, 981 F.2d at 1019.

Additionally, the ALJ properly relied upon the opinions of two orthopedic consultative examiners, Dr. Drake and Dr. David Haaland, whose finding that Plaintiff was not temporarily totally disabled, contradicted Dr. Steiger's and were based on independent clinical evidence.  (AR at 16-17); <u>Andrews</u>, 53 F.3d at 1041; <u>Magallanes</u>, 881 F.2d at 751; <u>Miller</u>, 770 F.2d at 849.  Dr. Drake concluded, "Based on [Plaintiff's] history, a review [sic] medical records, and her examination today, it is felt that her current physical limitations are that she can occasionally lift and carry 50 lbs. and frequently lift and carry 20-25 pounds.  She can stand and/or walk for six hours in an eight hour day with breaks every two hours."  (AR at 176.)  Dr. Haaland provided a similar assessment and further concluded that, "The primary symptom is pain and the severity of the alleged disabling limitations due to pain [per ADL form] does not have support from the objective medical evidence in file."  (<u>Id</u>. at 236.)  Dr. Haaland concluded that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk about six hours in an eight-hour workday, sit with normal breaks for a total of about six hours in an eight-hour workday, and push and pull without any other limitations. (<u>Id</u>. at 232.)  Thus, the ALJ's rejection of Dr. Steiger's conclusory findings and  reliance upon the findings of the consultative examiners constituted specific and legitimate reasons for rejected Dr. Steiger's contrary opinion.

Next, Plaintiff contends that the ALJ improperly considered the opinion of Dr. Sanford.  (JS at 28.)  Dr. Sanford concluded that Plaintiff did not have "any significant urinary incontinence."  (AR at 438.)  The ALJ's decision does not contradict Dr. Sanford's opinion.  (<u>Id</u>. at 15-20.)  Notwithstanding this fact, the

1   ALJ properly discredited Plaintiff's contentions regarding the severity of her
2   urinary incontinence. (<u>Id.</u> at 18); <u>see also</u> discussion <u>infra</u> Part IV. A.  Furthermore,
3   Dr. Sanford did not make any conclusions or recommendations of disability (<u>id.</u> at
4   438-39), and thus, Plaintiff's argument regarding the ALJ's consideration of Dr.
5   Sanford's opinion is without merit.

6          Finally, Plaintiff argues that the ALJ also improperly considered the opinion
7   of Dr. Wood.  (JS at 28.)  Dr. Wood diagnosed Plaintiff with the following
8   impairments:  (a) depression; (b) headaches; (c) sprain or strain of the cervical
9   spine with bulging discs; (d) sprain or strain of the lumbar spine; (e) sprain or
10  strain of the left knee; (f) bladder incontinence, bladder difficulties; and (g) gastric
11  distress.  (AR at 613.)  Dr. Wood concluded Plaintiff was temporarily totally
12  disabled, but he was unable to comment on whether she could return to her
13  previous work as he was uncertain as to the permanence, if at all, of her disability.
14  (AR at 614.)  However, as discussed above, the ALJ properly relied upon the
15  opinions of Drs. Drake and Haaland, who both concluded that Plaintiff was not
16  temporarily totally disabled.  (AR 16-17.)  Here again, the ALJ provided specific
17  and legitimate reasons, supported by contradictory medical opinions, to reject the
18  opinion of Dr. Wood.  <u>Thomas</u>, 278 F.3d at 957; <u>Andrews</u>, 53 F.3d at 1041;
19  <u>Magallanes</u>, 881 F.2d at 751; <u>Miller</u>, 770 F.2d at 849.

20         Based on the foregoing, the Court finds that the ALJ properly set forth
21  specific and legitimate reasons, supported by substantial evidence in the record, to
22  support his discounting of the medical opinions of Dr. Steiger, Dr. Sanford, and
23  Dr. Wood.

24  **C.     The ALJ Posed a Complete Hypothetical to the Vocational Expert.**

25         Plaintiff's final argument is that the ALJ impermissibly presented an
26  incomplete hypothetical to the VE when he failed to include Plaintiff's pain and
27  fatigue limitations.  (JS at 7.)  The Court disagrees.

28

Hypothetical questions posed to a VE need not include all alleged limitations, but rather those limitations which the ALJ finds to exist. Magallanes, 881 F. 2d at 756; Copeland v. Bowen, 861 F.2d 536, 540 (9th Cir. 1988); Martinez v. Heckler, 807 F.2d 771, 773-74 (9th Cir. 1986). Thus, an ALJ must propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations. Osenbrock v. Apfel, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (citing Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995); see also Andrews, 53 F.3d 1035, 1043 (9th Cir. 1995) (although the hypothetical may be based on evidence which is disputed, the assumptions in the hypothetical must be supported by the record).

Here, the ALJ did not find Plaintiff's assertions of pain and fatigue symptoms to be credible, as discussed above. See discussion infra Part IV. A. Based on the evidence in the record, there was no error in the ALJ's adverse credibility determination (see discussion infra Part IV. A). As a result, there was no error in the ALJ's hypothetical questions to the VE which did not include Plaintiff's alleged pain and fatigue symptoms. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("Because the ALJ included all of the limitations that he fond to exist, and because his findings were supported by substantial evidence, the ALJ did not err in omitting the other limitations that Rollins had claimed, but had failed to prove.")

## IV.

## ORDER

IT IS HEREBY ORDERED THAT Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

Dated: April 15, 2008

13

HONORABLE OSWALD PARADA
United States Magistrate Judge

14